Approved: _____
THOMAS S. BURNETT
Assistant United States Attorney

Before:   THE HONORABLE KEVIN N. FOX           **20 MAG 8269**
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - - - X
                                         :   SEALED COMPLAINT
UNITED STATES OF AMERICA                 :
                                         :   Violations of
    - v. -                               :   18 U.S.C.
                                         :   §§ 2320 and 2
JIAN LI,                                 :
    a/k/a "Jason Li,"                    :
                                         :   COUNTY OF OFFENSE:
                                         :   NEW YORK
                Defendant.               :
                                         :
- - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

THOMAS J. ADAMCZYK, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
(Trafficking in Counterfeit Goods)

1. From at least in or around February 2020 up to and including in or around March 2020, in the Southern District of New York and elsewhere, JIAN LI, a/k/a "Jason Li," the defendant, knowingly and intentionally did traffic and attempt to traffic in goods and services, and did knowingly use a counterfeit mark on and in connection with such goods and services, to wit, LI distributed cellphone products bearing, or in packages bearing, counterfeit trademarks owned by, among others, Apple, Samsung, Nike, Gucci, Adidas, Louis Vuitton, Chanel, and Supreme.

(Title 18, United States Code, Sections 2320(a)(1) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.      I am a Special Agent with HSI and a member of the joint New York City Police Department ("NYPD") and HSI Border Enforcement and Security Task Force.  I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials, on my conversations with witnesses, and on my examination of various reports and records.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Importation and Sale of Counterfeit Goods

3.      Based on my review of United States customs documents and shipping records, my conversations with Customs and Border Protection ("CBP") officers, and my review of photographs, I have learned, in sum and substance and among other things, the following:

   a.      On or about February 20, 2020, CBP officers designated for inspection a container arriving at Newark Seaport in Newark, New Jersey, from Yantian, China ("Container-1").  The importation paperwork stated that Container-1 contained 318 boxes.

   b.      According to CBP records, the importer of Container-1 was J&J Cellphone & Accessories Inc., located on West 27th Street, New York, NY ("J&J Cellphone").

   c.      After designating Container-1 for inspection, CBP officers moved Container-1 to a facility called H&M International Transportation, located on Belleville Turnpike in Kearny, New Jersey.

   d.      On or about March 5, 2020, CBP officers inspected fives box from Container-1.  The CBP officers discovered that those boxes contained a total of approximately 500 sets of what appeared to be a type of headphone known as "Airpods," which are manufactured by Apple, Inc.  Each set of headphones was in a box that bore the Apple logo and the name Apple, both of which are registered with the ("USPTO").

   e. A CBP import specialist who has training and experience in determining the authenticity of electronic products, including products made by Apple, inspected a sample of these 500 sets of headphones and concluded that they were not manufactured by Apple.

   f. On or about March 6, 2020, law enforcement officers inspected the remaining boxes from Container-1. They discovered that approximately 57 of those boxes contained counterfeit cellphone accessories. Specifically, the boxes contained:

    i. Phone chargers that appeared to be a type of charger manufactured by Samsung Electronics Co., Ltd., packaged in boxes bearing trademarks registered with the USPTO to Samsung;

    ii. Phone chargers, cables, and earphones that appeared to be types manufactured by Apple, packaged in boxes bearing trademarks registered with the USPTO to Apple;

    iii. Earphones packaged in boxes bearing trademarks registered with the USPTO to the Bluetooth Special Interest Group;

    iv. Protective cases for cellphones bearing trademarks registered with the USPTO to Nike, Gucci, Adidas, Louis Vuitton, Chanel, Supreme, and Apple;

    v. Protective cases for earphones bearing trademarks registered with the USPTO to Gucci, Louis Vuitton, and Supreme; and

    vi. Pop sockets bearing trademarks registered with the USPTO to Nike and Supreme.

   g. An individual employed by a private investigative firm, who has training and experience in determining the authenticity of products manufactured by major consumer-goods companies, inspected a sample of each of the products listed above and concluded that they were not manufactured by the company to which the relevant trademark is registered.

   h. On or about March 11, 2020, CBP officers changed the designation of the shipment associated with Container-1, such

that the importer received notification that the shipment was available for pickup.

    4. Based on my surveillance of Container-1 and my conversation with other law enforcement officers who conducted surveillance of Container-1, I have learned, in substance and in part, the following:

    a. On or about March 12, 2020, at approximately 1:00 p.m., a truck ("Truck-1") pulling a green container that bore container number EGHU9179409 ("Container-2") arrived at H&M International Transportation to pick up the shipment. The contents of Container-1 were loaded into Container-2, and Truck-1 left H&M International Transportation at approximately 2:20 p.m.

    b. Law enforcement officers followed Container-2 as Truck-1 took it from H&M International Transportation to what appeared to be a short-term storage yard located on Columbia Street in Brooklyn, New York. The driver of Truck-1 dropped Container-2 off at this short-term storage yard and left in Truck-1.

    c. Law enforcement officers continued to monitor the short-term storage yard. The next morning, on or about March 13, 2020, at approximately 6:00 a.m., they observed a second truck ("Truck-2") drive out of the short-term storage yard towing Container-2. Law enforcement officers recognized Container-2 by, among other things, its color and container number.

    d. Law enforcement officers followed Truck-2 as Truck-2 drove Container-2 from the short-term storage yard to 6th avenue between 26th and 27th Streets in New York, New York, where Truck-2 stopped.

    e. At approximately 7:15 a.m., law enforcement officers observed Truck-2 resume driving and park outside of J&J Cellphone. Three individuals, including an individual later identified as JIAN LI, a/k/a "Jason Li," the defendant, then unloaded the contents of Container-2 into J&J Cellphone.

    5. Based on my participation in the execution of a search warrant on J&J Cellphone, my conversations with other law enforcement officers involved in the execution of a search warrant on J&J Cellphone, and my conversations with JIAN LI, a/k/a "Jason Li," the defendant, I have learned, in sum and substance and among other things, the following:

4

        a.    After the three individuals unloaded the contents of Container-2 into J&J Cellphone, law enforcement officers applied for a warrant to search J&J Cellphone for evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2320 (trafficking in counterfeit goods).

        b.    While awaiting the warrant, law enforcement officers entered J&J Cellphone so they could freeze the store to assure that evidence of the importation of counterfeit goods would not be moved or destroyed.  When they entered J&J Cellphone, law enforcement officers informed the three individuals who had been unloading the container that the officers had applied for a search warrant and that the individuals were free to leave.

        c.    LI decided to stay inside J&J Cellphone and agreed to speak with law enforcement.  During the conversation, LI told law enforcement officers, in substance and in part, that the shipment in Container-2 did not contain counterfeit products, but that he had imported and sold counterfeit cellphone accessories in the past, including counterfeit Apple Airpods.  LI also stated that he orders from factories and vendors in China that know he sells counterfeit merchandise in his store.

        d.    At approximately 7:00 p.m., the Hon. Ona T. Wang issued a search warrant for J&J Cellphone.  Pursuant to that warrant, law enforcement officers searched J&J Cellphone and, in addition to the contents of Container-2, found a large quantity of counterfeit cellphone accessories.  Specifically, they found additional versions of the items listed in Paragraphs 3(d) and 3(f), as well as protective cellphone cases bearing trademarks registered with the USPTO to Disney.

        e.    Law enforcement officers also discovered a showroom in J&J Cellphone, which contained displays of counterfeit cellphone accessories.

    6.    Based on my conversation with an individual who specializes in identifying and valuing counterfeit electronics and electronic accessories, I have learned, in substance and in part, that the Manufacturer's Suggested Retail Price ("MSRP") of the counterfeit goods seized from J&J Cellphone was approximately $1.3 million.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JIAN LI, a/k/a "Jason Li," the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

```
                              s/Thomas J. Adamczyk byKNF,USMJ
                              THOMAS J. ADAMCZYK
                              Special Agent
                              Department of Homeland Security
                              Homeland Security Investigations
```

Sworn to through the transmission of this Complaint by reliable electronic or telephonic means, pursuant to Federal Rule of Criminal Procedure 4.1, this 6 day of August, 2020

*Kevin Nathaniel Fox*

_____
THE HONORABLE KEVIN N. FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK